IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

_____

| | | |
|---|---|---|
| DARRYL HAMILTON, | ) | Cause No. CV 10-38-GF-SEH-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATION OF |
| SAM LAW; MIKE FERRITER; | ) | U.S. MAGISTRATE JUDGE |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On June 15, 2010, Petitioner Darryl Hamilton filed this action for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner proceeding pro se.

On June 24, 2010, Respondents were ordered to file the trial transcript and an affidavit defense counsel filed in postconviction proceedings. They complied on July 15, 2010.

All of Petitioner's claims rely on Strickland v. Washington, 466 U.S.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 1

668 (1984). All are decisively negated by the trial transcript.

## I. Background

Petitioner was convicted of eight counts of incest. Each count covered a one-year period, beginning in 1997, when B. was seven, and ending in 2004, when she was fourteen. As pertinent here, "[a] person commits the offense of incest if the person knowingly . . . has sexual contact . . . with . . . [a] stepdaughter." Mont. Code Ann. § 45-5-507(1) (2009). "Sexual contact" means "touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely . . . arouse or gratify the sexual response or desire of either party." Id. § 45-2-101(67)(b).[1]

The evidence at trial was overwhelming. B. testified to an escalating series of incidents in which Petitioner touched her for his own sexual gratification. E.g., Trial Tr. at 270:23-271:16, 278:25-279:24, 281:10-284:2,

---

[1] Although the 2009 versions of these statutes are cited, there was no material change in their meaning in Petitioner's case throughout the period in question. The phrase "directly or through clothing" was added in 1999. 1999 Mont. Laws ch. 288, § 1 (Apr. 9, 1999). Before the amendment, the Montana Supreme Court held that touching the sexual or intimate parts of another through clothing was sufficient to show sexual contact. State v. Gilpin, 756 P.2d 445, 451-52 (Mont. 1988).

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 2

300:12-302:17, 320:3-5, 341:7-23. He told her not to tell anyone else what he was doing. He punished her and her family and threatened to turn to her little sister or her "cute" friends if she did not let him do what he wanted. Id. at 305:3-310:16. Petitioner himself admitted that he "humped and petted" B., though he later attempted to redefine those words benignly. Id. at 377:24-379:16. Though almost the entire course of conduct was known only to B. and Petitioner, B.'s mother and sister also corroborated some of her testimony, id. at 186:11-25, 203:5-205:25, 394:12-398:10.

## II. Petitioner's Allegations

Petitioner alleges a breakdown in communications between him and his attorney resulted in counsel's failure to explore (1) his wife's false accusations of stalking and her impersonation of someone else in accusing him of having an affair, (2) the history of sexual misconduct in his wife's family, (3) alibi evidence in the form of time records from his employment, and (4) the prospect of calling a medical expert witness on behalf of the defense. He also asserts that counsel was ineffective because he (5) promised the jury Petitioner would testify, (6) permitted a police officer to

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 3

testify as an expert on Petitioner's veracity, and (7) demeaned Petitioner in closing argument. Finally, he avers that counsel (8) had a drinking problem and did not want to take the case to trial. Pet. (doc. 1) at 4-5 ¶¶ 15A-B; Pet. for Postconviction Relief (doc. 1-1) at 8-9 ¶¶ A-F.

### III. Analysis

Claims of ineffective assistance are governed by Strickland v. Washington, 466 U.S. 668 (1984). Petitioner must show both that counsel's performance fell below an objective standard of reasonableness, id. at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

### A. Claims 1 and 2

To the extent Claims 1 and 2 go to Petitioner's wife's credibility, they are meritless. Mont. R. Evid. 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness'[s] credibility, may not be proved by extrinsic evidence." See also

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 4

State v. MacKinnon, 957 P.2d 23, 30-31 (Mont. 1998); State v. Rendon, 903 P.2d 183, 185-86 (Mont. 1995) (excluding evidence like that adduced by Petitioner).  Counsel probably could not have introduced the evidence.

Moreover, Petitioner was not prejudiced; the trial transcript admits of no doubt that he would have been convicted even if the jury had heard about his wife's peccadilloes.

Claim 2 implies that the victim fabricated her testimony.  Petitioner offers no evidence to support his implication.  Claims 1 and 2 should be denied.

### B. Claim 3

Claim 3 mistakes the nature of the charges and testimony.  Each of the eight counts of incest covered a one-year time span.  B. said Petitioner frequently assaulted her when he came home from work at lunchtime and on Saturday mornings, when Petitioner was not at work.  Petitioner does not deny that he regularly left work at lunchtime, nor does he claim that he worked every Saturday in any given year.  And even if he did, the jury only had to find, beyond a reasonable doubt, that Petitioner touched B. for his own sexual gratification one time each year for eight years.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 5

Petitioner's work records would not refute the testimony or undermine B.'s credibility because she did not claim to remember specific dates. Neither prong of Strickland is met. Claim 3 should be denied.

### C. Claim 4

Claim 4 is meritless. The expert called by the prosecution, Dr. Maynard, testified that she found no physical evidence to support B.'s statements. Trial Tr. at 413:14-20, 416:18-417:8, 419:25-420:5. On cross-examination, counsel emphasized this point. Id. at 423:10-25. Dr. Maynard also testified that physical examination could not "prove or disprove either way" what B. said. Trial Tr. at 420:4-5. Petitioner offers no reason to believe that counsel could have found a medical expert who would testify that the absence of physical evidence refuted B.'s testimony. Therefore, counsel was not deficient in failing to call such an expert.

Further, Petitioner was not prejudiced. The State alleged sexual contact, not penetration, as Petitioner implies. Claim 4 should be denied.

### D. Claim 5

Petitioner offers no reason to believe that counsel should have known he might decide not to testify. He admits that, before trial, counsel told

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 6

him "he would be his own best witness, and they did not need anyone else for the defense." State Pet. for Postconviction Relief (doc. 1-1) at 4 ¶ 13. He does not say he told counsel before trial that he did not want to testify or felt unprepared to do so. Additionally, Petitioner was not prejudiced. Counsel told the jury Petitioner would explain "a minor incident of accidental contact and several occasions when he looked at" the victim. Id. That is essentially what Petitioner said in his videotaped statement played for the jury in the State's case-in-chief. Neither prong of the Strickland test is met. Claim 5 should be denied.

### E. Claim 6

With a narrow exception where the credibility of a child victim of sexual abuse has been questioned, Montana law does not permit expert testimony on witness credibility. E.g., State v. St. Germain, 153 P.3d 591, 597 ¶ 27 (Mont. 2007). Arguably, Detective Shaffer told the jury that, based on his special familiarity with the "signs of deception," Petitioner's statement should be viewed with skepticism. Trial Tr. at 371:14-372:15.

Even so, Petitioner was not prejudiced. Defense counsel undermined Shaffer's testimony by asking common-sense questions about Petitioner's

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 7

"non-verbal" signals.  Shaffer admitted that most people behave nervously when they are awaiting an interview with the police, that people who have never been interviewed by the police are probably more nervous, that Petitioner "didn't know specifically what he was going to be questioned about other than it involved his daughter," that he was cooperative, waived his rights, agreed to talk, and was "forthright about the petting and humping of his daughter."  Trial Tr. at 376:17-378:1.  All of these points undermined Shaffer's opinion about the meaning of Petitioner's gesture of putting his hand in front of his mouth.

Most importantly, Petitioner was convicted by his own words, not by Shaffer's testimony about his gestures. Petitioner admitted "humping and petting" the victim.  He later purported to define "petting" as "a hug," "putting his arms around her arms," Trial Tr. at 378:6-8, though he described "humping" more realistically, id. at 374:19-20.  But a reasonable person would interpret those words to mean touching the sexual or intimate parts of B., or touching his own sexual parts to her, whether directly or through clothing, for his own sexual gratification.  That is incest.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 8

Petitioner's statement, along with the victim's testimony, made the jury's verdict virtually inevitable. In light of the trial transcript, there is no reasonable probability that Petitioner would have been acquitted on any count even if Shaffer had not told the jury to view Petitioner's statement with skepticism. Claim 6 should be denied.

### F. Claim 7

Petitioner's claim that counsel "demeaned" him in closing argument misunderstands both the difficulty of his own situation and counsel's response to it. No reasonable person could have concluded the allegations were totally unfounded. Petitioner admitted and did not retreat from his admission that he was sexually aroused by the victim. Counsel's only choice was to press the jury to determine whether the State's proof was sufficient to prove each individual count beyond a reasonable doubt. Trial Tr. at 469:2-13. That is what he did. E.g., Trial Tr. 469:14-470:2. Because B. did not testify to precise dates, counsel also questioned the plausibility of Petitioner's abusing B. while her brother and sister were in the house and the plausibility of her mother's repeated absences from the house. But even the best lawyers can be defeated by the evidence. Here, it was overwhelming. Claim 7 should be denied.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 9

### G. Claim 8

Finally, Petitioner claims that counsel had a drinking problem and did not want to take the case to trial. One would not need to have a drinking problem to be reluctant to take this case to trial. Petitioner has not suggested a link between counsel's irresponsibly-alleged problem and his performance. If counsel did not want to go to trial, that desire was plainly based on a sober professional assessment of Petitioner's chances. Claim 8 should be denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Hohn v. United States, 524 U.S. 236 (1998).

While most of Petitioner's claims cannot even support a claim of deficient performance, they all fail to show prejudice. Even if the jury had learned of those instances when Petitioner's wife did not tell the truth, her credibility was not central to his conviction. He has no evidence that B. fabricated her testimony. He has no alibi evidence that could have

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 10

negated all sexual contact for a year-long period, nor would gaps in the child's memory about certain dates have had any effect on the verdict. The medical testimony was not particularly relevant because only sexual contact had to be shown. A detective's opinion that Petitioner's statement showed "signs of deception" paled in comparison to Petitioner's own words, admitting he "petted and humped" the victim. Counsel's closing argument pursued the only available strategy, not to "demean" Petitioner, but to press the jury to focus on the sufficiency of B.'s testimony about each year in which sexual contact was alleged. Finally, Petitioner makes no connection between counsel's irresponsibly-alleged "drinking problem" and his performance in Petitioner's case, which is one reason it is irresponsible to allege it. Not wanting to take the case to trial was a sound assessment of Petitioner's chances.

None of the things Petitioner claims counsel should have done differently had even a slight chance, much less a reasonable probability, of changing the outcome. A COA should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 27th day of July, 2010.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 12

                              /s/ *Keith Strong*
                              Keith Strong
                              United States Magistrate Judge